## IN THE COURT OF APPEALS OF IOWA

No. 16-1360
Filed December 21, 2016

**IN THE INTEREST OF T.J.R.,**
**Minor Child,**

**S.R., Mother,**
       Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Rustin T. Davenport, Judge.

A mother appeals from termination of her parental rights.  **AFFIRMED.**

Michael J. Moeller of Sorensen & Moeller Law Office, Clear Lake, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Crystal L. Ely of North Iowa Youth Law Center, Mason City, for minor child.

Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DANILSON, Chief Judge.**

A mother appeals from the termination of her parental rights to her child. The mother contends the State failed to prove grounds for termination under Iowa Code section 232.116(1)(a), (e), and (h) (2015); argues termination is not in the child's best interests; and asserts the section 232.116(3)(c) exception based on the parent-child bond applies to preclude termination. We acknowledge the mother has made strides in her personal life, but her inability to meet the child's basic medical and nutritional needs placed the child in danger of blindness and choking on food due to the child's medical conditions. There is also risk that she will continue in a violent domestic relationship, and she has failed to follow through in gaining parenting skills. Accordingly, we conclude grounds for termination exist under section 232.116(h), termination is in the child's best interests, and a six-month extension is not warranted. We therefore affirm.

### I. Background Facts & Proceedings.

This family came to the attention of the department of human services (DHS) in December of 2014 when the child—born in April 2014 and just eight months old at the time—was left alone for an undetermined period of time by C.B., the child's legal father,[1] while the mother was at work. C.B., who is married to the mother, left the child alone to use illegal substances. DHS initiated a child abuse investigation, during which it was discovered C.B. had substance-abuse issues, the mother had issues with alcohol abuse, and their relationship had a significant history of domestic violence. The child abuse assessment was

---

[1] During the pendency of this matter it was determined that C.B. is not the biological father of the child. The biological father is D.H. C.B.'s and D.H.'s parental rights were also terminated. C.B. and D.H. do not appeal.

founded for denial of critical care, with C.B. designated the perpetrator. The child remained in the care of the mother, but DHS directed the mother to complete substance-abuse treatment, seek mental-health treatment, and prevent C.B. from having unsupervised contact with the child.

The mother did not participate in services or make herself available to DHS and Family Safety, Risk, and Permanency (FSRP) providers. The mother was so difficult to reach by phone call, text, or in person that DHS eventually required her to be home every day between 3:00 and 3:30 p.m. for providers to drop in. The mother did not comply with that requirement. Additionally, although the mother did complete a substance-abuse evaluation, she did not follow up with treatment and was unsuccessfully discharged from the program. Other than sporadically attending marriage counseling with C.B., the mother did not seek mental-health treatment. DHS also came to believe the mother was using alcohol and permitting C.B. to stay in the home many nights. For these reasons, the child was removed from the mother's care in August 2015.

After the child's removal, to her credit, the mother began participating in services. The mother completed group treatment and attended individual counseling through a substance-abuse treatment facility. The mother met regularly with FSRP providers and attended semi-supervised visitation with the child twice per week. The mother also participated in crisis intervention and Area Education Agency services. The mother had consistent housing and obtained steady employment. There was no indication the mother was using illegal substances or alcohol. The mother also attended mental-health counseling more

regularly after the child's removal. However, concerns regarding the safety of the child in the mother's care remained at the time of the termination hearing.

First, the mother did not support, but rather undermined, the child's access to necessary medical care. The child has congenital ptosis, a condition in which a lack of muscles in the eyelids prevents the child from being able to open the child's eyes properly. Doctors explained, if not treated by surgery, the condition would cause blindness due to the extreme strain on the child's eyes. The foster parent testified prior to receiving the surgery the child would often be injured by running into things and tripping. Regardless, the mother disputed the child's need for the surgery, stating the condition is hereditary and she believed he would grow out of it. Though the mother was permitted to seek a second opinion regarding the need for the eye surgery, she did not make proper arrangements to ensure the child attended an appointment she had made. The mother also cancelled the first scheduled surgery, and DHS was required to obtain a court order to have the surgery completed. The mother was not present at the time of the surgery and could not be reached to provide needed information to the medical professionals. Although the procedure was successful and the child's condition improved, the mother maintained the surgery was not needed.

DHS workers testified the mother also failed to demonstrate an ability to provide appropriately for the child's nutritional needs. It was explained to the mother she needed to provide a nutritional meal for the child during her four-hour visits, and providers gave the mother information about meals to prepare and appropriate portions. However, the mother failed to demonstration a change in

ability to provide sufficient meals for the child.  In June 2016, a few weeks before the termination hearing, it was reported the mother fed the child almost an entire tube of Pringles for his meal.

The mother's ability to provide the child appropriate and nutritious food is especially important because the child has difficulty swallowing and is prone to choking.  DHS workers testified the mother's failure to meet the child's nutritional needs was a large factor preventing the mother from transitioning to unsupervised visitation.  Yet the mother continued to fail to provide appropriate food for the child.  Thus, DHS workers testified the mother's progress was stagnant because she had been in the semi-supervised level of visitation for a lengthy period of time.

These issues were highlighted during the only overnight visitation granted to the mother over Thanksgiving 2015.  The child was returned late to the foster family, had been sparsely fed,[2] and had not been bathed.  Additionally, the mother had noticed the child had a rash and a lump on his neck, called "ask a nurse," and did not take the child to a doctor despite being advised to do so.  The foster family took the child to the doctor the next day, and he was treated for strep throat.

Also, of significant concern was the mother's continuing relationship with C.B.  At the time of the termination hearing, C.B. was in prison, with a release date in 2018.  A DHS worker testified when she spoke with the mother regarding her relationship with C.B.:

---

[2] A DHS worked testified, "She said that she gave him a couple things of yogurt and that was it."

> She stated the no contact order was dropped. I had asked her if she had spoken to him. She stated she had. She was very back and forth about the relationship and where they stood. And, again, this goes back and forth with the pattern that they have had since the onset of the case. She would not make—she did not have a clear decision on where they were in regards to the relationship between the two.

At the time of the termination hearing the mother was still emotionally and financially dependent on C.B., and they remained married. DHS workers testified that while she recognized the domestic violence in the relationship, and began attending counseling to address the issue, the mother had not clearly stated her intent to leave the relationship.

After a termination hearing held July 18, 2016, the district court terminated the mother's parental rights to the child in a July 29, 2016 order. The mother now appeals.

## II. Standard of Review.

We review termination of parental rights de novo. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Grounds for termination under Iowa Code section 232.116 must be proved by clear and convincing evidence. *Id.* "The paramount concern in termination proceedings is the best interests of the child." *In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011).

## III. Analysis.

We follow a three-step analysis in determining whether termination is appropriate under chapter 232:

First, the court must determine if a ground for termination under section 232.116(1) has been established. If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights. Third, if the statutory best-interest framework supports termination of parental rights, the court must consider if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights.

*D.W.*, 791 N.W.2d at 706-07 (citations omitted).

*A. Grounds for Termination.* The mother contends the State failed to prove grounds for termination under Iowa Code section 232.116(1)(a), (e), and (h). We find clear and convincing evidence supports grounds for termination under section 232.116(1)(h).[3] *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

At the time of the termination hearing, the child was less than three years of age, had been adjudicated a child in need of assistance, and had been removed from the mother's care for nearly one year. The district court determined the child could not safely be returned to the mother's care because "there was n[o] evidence [the mother] was ready to end her relationship with [C.B.] or protect [the child] from being exposed to domestic violence in the home." The court also found:

---

[3] Section 232.116(1)(h) provides the court may order termination of parental rights if the child is three years of age or younger; has been adjudicated a child in need of assistance (CINA); has been out of the custody of the parent for at least six of the last twelve months, or for the last six consecutive months; and cannot safely be returned to the parent's care at the present time.

> While [the mother] would express her willingness to do the appropriate thing, there was generally an inability to follow through with the matters that she had to do for effective parenting.
>
> It should be noted that [the mother] had been provided similar services in the past. Services were provided with other children of [the mother]. Despite the advice and services provided in this case, as well as the prior cases, [the mother] demonstrated little ability to improve her performance as a parent.
>
> . . . .
>
> Despite having services provided to her, [the mother] did not demonstrate significant improvement in her ability to care for [the child]. While she had a somewhat successful visitation with [the child] in limited quantities, overall she failed to progress as necessary. There was no indication that she was ready to resume care of [the child]. The neglect regarding the medical condition, failure to consistently meet his nutritional needs, general failure to follow through with services all suggest that [the mother] is not capable of providing proper care for [the child].

Thus, the district court determined there was clear and convincing evidence of grounds for termination of the mother's parental rights to the child. We agree.

Throughout the pendency of this matter, the mother did not take the steps necessary to transition from semi-supervised to unsupervised visitation, let alone to ensure the child could safely be returned to her full-time care. The juvenile court noted the mother "failed to comprehend and was unable or unwilling to take actions to correct" developmental deficits of the child and to attend to his medical conditions. This finding is supported by the record.

The mother failed to acknowledge the child's medical needs and failed to improve her ability to provide nutritional meals for the child. The mother's lack of follow-through in improving these skills demonstrates her inability to appropriately provide for the child's future needs. Additionally, the mother failed to take steps to create an environment free of the threat of domestic violence to which the child

could be returned. For these reasons, we conclude clear and convincing evidence supports grounds for termination under section 232.116(1)(h).

*B. Best Interests, Parent-Child Bond, and Additional Time.* The mother also asserts termination is not in the child's best interests and termination would be detrimental to the child due to the strong parent-child bond. The mother requests six additional months to seek reunification with the child under section 232.104(2)(b).

Pursuant to section 232.116(2), in determining whether termination is appropriate, "the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re C.B.* 611 N.W.2d 489, 495 (Iowa 2000) (citation omitted).

The mother's performance throughout the pendency of this matter indicates she is not capable of providing appropriate care for the child. The district court determined:

> [T]he child's safety, and best opportunity for furthering the child's long-term nurturing and growth, as well as the physical, mental and emotional condition and needs of the child support termination of parental rights.
> 		[The mother] has failed to progress to demonstrate she is capable of providing for the needs of [the child]. There are demonstrated concerns regarding providing for [the child]'s health, nutrition, and development.

We agree with the district court that termination is in the child's best interests. The child's foster parent testified the foster family intends to adopt the child in the event of termination. The foster placement has provided the child with the necessary medical, nutritional, and custodial care to help the child get back on track developmentally. It is in the child's best interests to terminate the mother's parental rights and allow the child to achieve permanency in a safe and nurturing home. *See C.B.*, 611 N.W.2d at 495. ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."). While we acknowledge the strong bond the mother has with the child, the parent-child bond is not so strong as to outweigh the need for termination.

We also conclude granting an additional six months to allow the mother to seek reunification is not appropriate in this case. Based on the facts and the mother's past performance, there is no indication that the reasons for termination will no longer exist in six-month's time. *See* Iowa Code § 232.104(2)(b). Throughout the pendency of this matter over the span of more than one year, the mother made significant personal progress but little, if any, progress in her parenting skills and the ability to provide safety to the child. Thus she was not able to achieve reunification and was not able to transition to unsupervised visitation. In sum, the mother has not shown her ability to provide for the child's safety and medical and nutritional needs will improve such that the child could be returned to her care in six months.

**IV. Conclusion.**

We conclude grounds for termination under section 232.116(1)(h) have been established by clear and convincing evidence, termination is in the child's best interests, no exception serves to preclude the need for termination, and an additional six months would not result in reunification. We therefore affirm the termination of the mother's parental rights to the child.

**AFFIRMED.**